(No. 20097.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN BUONICONTI, Plaintiff in Error.

*Opinion filed June 20, 1930—Rehearing denied October 10, 1930.*

ISIDORE FRIED, EDWARD HORCHLER, and BERNARD A. STOL, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, C. W. Reed, State's Attorney, and Merrill F. Wehmhoff, (Win G. Knoch, and R. W. Keeney, of counsel,) for the People.

Mr. Justice Farmer delivered the opinion of the court:

John Buoniconti (hereafter referred to as defendant) and Anna DeStefano were jointly indicted during October, 1928, by a grand jury of DuPage county for the murder of Arthur Thomas on September 29, 1928. They pleaded not guilty and Mrs. DeStefano asked a severance, which was granted, and she testified for the People. Buoniconti was found guilty of murder and sentenced to life imprisonment in the penitentiary. He has sued out this writ of error to review the record.

Deceased was a colored man. Defendant, who was a married man having a wife and several children, owned a so-called mineral spring at Lemont, Illinois, and on Saturday morning, September 29, he, Mrs. DeStefano, deceased and another colored man named Stanton, drove in defendant's car from Chicago to the spring. The record discloses that defendant, Mrs. DeStefano, deceased, and a number of the witnesses and parties connected with them, were of the underworld and resided in Chicago. Defendant, Mrs. DeStefano, deceased and others with whom they associated, white and black, sustained illicit relations indiscriminately. Defendant admitted killing deceased but claimed he did it in self-defense. The record discloses no reason or motive for deceased attacking or attempting to kill defendant, and the only motive shown for defendant killing deceased is that at one time, over three months prior to the murder, deceased took Mrs. DeStefano, with whom defendant was living, to a room deceased had, to get some liquor, and there had intercourse with her. Defendant was informed of this and made threats against deceased on several occasions before the day he took him out to the spring. On the morning of September 29, defendant, Mrs. DeSte-

fano, deceased and Stanton, the other colored man, went to defendant's mineral spring at Lemont ostensibly for the purpose of defendant making a deal with deceased to handle the water of his spring. Stanton was to obtain employment from the deceased. When they arrived at the spring in defendant's car some or all of them got out of the car. They went to various places in or about the garage and the house enclosing the spring, when defendant claims he heard Mrs. DeStefano cry, "Look out! They are going to get you!" The claim is made by defendant that deceased had a revolver and shot at defendant six times, and that defendant having a shot-gun in the car then secured it from his car. Deceased ran into the garage and defendant saw him through a window re-loading his revolver, and defendant pushed his shot-gun through the window and shot and killed him. Stanton, the other negro in the party, escaped through the weeds near the garage and went to the road, where he secured a ride in a car with two white men until he met an officer, with whom he went back to the garage, and they there found deceased lying dead in the garage. He was shot in the head. Immediately after the shooting defendant and Mrs. DeStefano got in defendant's car and drove to Mary Hayden's road house, where they got something to eat and lodging for the night. Sunday one Iandola took defendant and Mrs. DeStefano to Frank Schultz's house, in Brookfield, where they stayed all night. Defendant told one Filizzola, a cook at Mary Hayden's place, that deceased was a white-slaver—made the white girls do whatever he wanted them to—and that is the reason he killed him. Iandola testified that he heard defendant say he shot a negro; that the negro was behind the garage with a gun, and that defendant forced him into the garage and shot him. Tuesday night defendant and Mrs. DeStefano left Chicago by train and went to Michigan, where they were arrested and consented to return to Illinois without a requisition.

This is a very meager outline of the testimony, which fills almost two hundred pages of the abstract. There was no possible motive shown why deceased should want to take the life of defendant. They went to the spring for the purpose of making some kind of an arrangement by which deceased was to handle the water from the spring for defendant, and when they arrived there, according to defendant's testimony, deceased sought to kill him, and defendant killed him in self-defense. Men do not ordinarily take the life of another fellow-man without some motive. The only possible motive that deceased could have had for wanting to kill defendant was jealousy because of defendant's relations with Mrs. DeStefano, and there is no proof whatever that such motive actuated the deceased. There is proof that defendant threatened to take the life of deceased because he had taken Mrs. DeStefano to his room and there had intercourse with her. The proof shows deceased and Mrs. DeStefano had sustained illicit relations for several years, though both were married. Mrs. DeStefano and defendant had become estranged after the murder and she testified for the People. Correspondence between them was introduced in evidence, in some of which Mrs. DeStefano said she would turn State's evidence, and if she opened up on defendant it would be too bad for him; that she would bring out about Paul (who was her former husband and who had been dead a year or more) and would tell everything else that she knew. She testified that what she meant by writing defendant that she would tell about Paul was, that one of defendant's bodyguards said defendant was the man who killed her husband. The question which brought out that answer was objected to, but the objection was immediately withdrawn. James Melone testified as a witness for defendant that he never had a conversation with Mrs. DeStefano in which he told her that defendant killed Paul.

It is argued the court committed error in admitting evidence of another crime. There was no objection, or, rather,

the objection made to the introduction of this evidence was, withdrawn, and the question is not preserved for review. *People* v. *Armstrong,* 299 Ill. 349; *People* v. *Steinbuch,* 306 id. 441; *People* v. *Fisher,* 295 id. 250.

Evidence of motive on behalf of the People was proper and competent. (*People* v. *Looney,* 324 Ill. 375; *People* v. *Wolf,* 334 id. 218.) Proof was made by the People of contradictory statements made by defendant which were inconsistent with his claim that he killed Thomas in self-defense. It was testified to, among other things, that defendant after the murder told the DeStefano woman, in the presence of witnesses, that if she would tell the truth she would acknowledge it was she who killed Thomas. The jury was the judge of the weight and credibility of the testimony. In view of the inconsistent and contradictory statements proved to have been made by defendant and no motive appearing why Thomas should attempt to take defendant's life, a reviewing court would not be justified in saying the verdict is contrary to the evidence.

Defendant's contention that the evidence is insufficient we do not think is sustained by the record. *People* v. *Limeberry,* 298 Ill. 355; *People* v. *Rembowicz,* 335 id. 604; *People* v. *Thompson,* 321 id. 594.

It is urged by defendant that the court erred in giving instructions for the People and refusing instructions asked for by defendant. The given instructions complained of were principally instructions defining manslaughter, murder, self-defense and reasonable doubt. It would serve no useful purpose to take up the instructions given and refused, which were objected to, one by one and discuss them. We do not think any prejudice resulted from the giving and refusing of instructions, and the verdict does not appear to have been the result of passion or prejudice.

Without further extending this opinion we are satisfied the verdict was warranted by the evidence, and the judgment is affirmed.

*Judgment affirmed.*