THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROGER L. WOODS, Defendant-Appellant.

(No. 71-316;

Second District—May 25, 1973.

*Supplemental opinion filed October 3, 1973 upon rehearing.*

Sheldon Schapiro and Sol Kalena, both of Evanston, and Gerald Eisen, of Chicago, for appellant.

William V. Hopf, State's Attorney, of Wheaton, (Ralph J. Gust, Jr., Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

On May 9, 1970, the defendant was charged in a two count indictment with having committed the offense of indecent liberties with a child and attempt rape. The cause was tried by a jury and he was found not guilty of attempt rape but guilty of indecent liberties. Defendant applied for and the trial court granted probation for a period of five

years, the first year to be served in the state prison farm at Vandalia, Illinois. The defendant has appealed and has alleged several grounds for reversal.

On May 23, 1970, at approximately 10:15 P.M. the defendant was arrested in Evanston, Illinois, by Evanston policemen upon a charge of rape, in which the motor vehicle of the defendant, a Buick Riviera, license # LC 9704, was involved earlier in the evening. He was taken to the Evanston police station, and his car subsequently searched. A revolver was found in the console between the two front seats and certain route cards were seized from the trunk of the car. The next day, on May 24, 1970, Marirose Brown, the complaining witness in the instant case, was driven by the Bensenville police to the Evanston police station. A lineup was had of four men including the defendant. Defendant's private counsel was present. The complaining witness identified the defendant as the man who had committed the offenses against her in Bensenville, Illinois, on May 9, 1970.

The complaining witness testified that as she was walking to the shopping center in Bensenville, the defendant drove up in a blue car with a black top and asked her where a certain road was. He drove by again and asked her if she wanted a ride. She refused, kept on walking, he drove alongside her, opened the door; she testified she thought she saw a gun, and he told her to get in the car. Defendant then drove on and she asked to be let out. He continued to drive around the Bensenville area. She testified that he drove to the rear of the stores in the shopping center and parked his car by the garbage can. Defendant locked the doors with an electric button and engaged the complaining witness in general conversation. He asked her to have intercourse or commit deviate sexual acts with him which she refused. He then grabbed her by the right breast and placed his hand between her legs in the region of her vagina. She slapped him and purportedly struggled. He allegedly placed a gun in her side, she screamed and was able to open the door and get out of the car. She then went into the shopping center where she met a girl friend and complained to her about what had happened. Shortly thereafter, her parents drove her to the Bensenville police station where she made a statement to the police which was reduced to writing.

■■ The first contention of the defendant is that he was not proven guilty beyond a reasonable doubt. In support of that contention he alleges that the testimony of the complaining witness as to the incident in question was not clear and convincing; that she suffered no injury, her clothes were not torn and she did not lose her earrings. Defendant further points out that she was not taken to a doctor. In this regard

there is no allegation that the complaining witness was injured or that any penetration had been made into her vagina. It is obvious that a doctor's examination was not necessary for any purpose. Defendant points out that as they were driving around the Bensenville area she had an opportunity to exit the car but did not do so. The defense pointed out upon cross examination of the complaining witness in her testimony at the trial, that in her statement to the police she did not mention a gun.

■■ Among other alleged discrepancies in testimony urged by the defense was the identification of the car in question; that at the time of her complaint she stated the car was a dark blue automobile with a black top, bucket seats and a console between the two front seats. She was not able to positively identify the make of the car but thought it was a Mercury. The car the defendant was driving at the time of his arrest in Evanston was a Buick Riviera, a dark blue car with a black vinyl top, bucket seats and a console between the two front seats. Defendant states that it is unlikely that he would attempt to have sexual relations "in a National parking lot on Saturday afternoon." He neglects to mention the fact that the car was parked beside a garbage container at the rear of one of the buildings in the shopping area where the general public ordinarily does not park.

■■ It is true that there are discrepancies in the complaining witness' description of the vehicle and some minor discrepancies as to her description of the defendant, but it is to be expressly noted that two weeks later at the Evanston police station lineup she immediately identified the defendant as the man who had committed the assault upon her on May 9, 1970. The lineup appears to have been properly conducted, defendant's counsel was present, and the complaining witness positively identified the defendant in the court room as the one who had committed the assault upon her in broad daylight.

■■ The defendant next contends the complaining witness committed perjury. In her testimony at the trial in support thereof he raises the issue of the exact time of the occurrence. The original statement given to the Bensenville police stated the occurrence to have been about 2:20 P.M. After the arrest of the defendant in Evanston the complaining witness signed a statement in which the time is stated to have been at 2:00 o'clock. Defendant points out that the complaining witness in her testimony stated she noticed the time on a clock at the shopping center which read 2:54 before defendant appeared and that she exited the car between 3:00 and 3:30 P.M. On the basis that she alleged the occurrence to have been at 2:00 o'clock in her signed complaint defendant contends that this is a perjured statement. While various times are men-

tioned, it is to be remembered that the complaining witness was a fourteen year old girl who undoubtedly was under great stress at the time of the incident, and this court does not believe that this constituted perjury.

In *People v. Strother* (1972), 53 Ill.2d 95, 100-101, 290 N.E.2d 201, 204, the court stated:

"Minor discrepancies in testimony taken at two different times do not establish perjury nor destroy the credibility of the witness but only go to the weight of the testimony. [Citation.]"

The discrepancies in the time varying from 2:00 P.M. to 3:30 P.M. were brought out in great detail by the defense before the jury and was an issue considered by them.

■■ The next alleged error complained of by the defendant pertains to his arrest in Evanston. There is no question but that the identification of the defendant in the Evanston police station lineup was a necessary element of proof. Many conferences were held in chambers in which the trial judge assiduously admonished counsel that the reason for the arrest in Evanston was to be kept from the jury. Examination of the record discloses that this was accomplished even though at one time it was necessary for the court to admonish defense counsel that he was indirectly putting this into evidence. There is no argument that it is highly improper and prejudicial to introduce evidence of a similar or prior crime. That is not the case before us. The identification of defendant by the complaining witness in Evanston, the description of the car and the gun found by the Evanston police, were of probative value for the instant offense. At no time was the jury apprised that the defendant was arrested by the Evanston police, no reference was made to "arrest" or "custody." There is a distinct difference between evidence of prior unrelated offenses being presented to the jury and the situation in the case before us.

■■ The defendant alleges that the gun in question and certain route cards found in the automobile were improperly admitted into evidence. Prior to trial, a motion to suppress these items was heard by the trial court and denied. The defendant contends the search of his car was illegal. An examination of the record does not substantiate this allegation. The police officers testified that they wanted to search his car, that he gave them the keys and agreed. Upon direct examination, defendant denied that he had a gun in the car on May 9, 1970, and the following colloquy took place.

"Q. And did you have the gun in the Buick Riviera on May 24th when the police officers stopped you in Evanston?

A. Yes. It was still in the car.

Q. And at that time did they request to search your car?
A. Yes.
Q. And you let them, did you not?
A. Yes, I did.
Q. And were certain cards also seized?
A. In the trunk of my car, Yes."

In this court's opinion such a statement by the defendant is consent. In *People v. Ledferd* (1968), 38 Ill.2d 607, 610, 232 N.E.2d 684, the court said:

"One who consents to a search waives his constitutional protection against unreasonable search. [Citations.] Whether consent has been given is a question of fact to be determined initially in the trial court, and where the evidence on the issue is in conflict this court will uphold the trial court's finding unless it is clearly unreasonable. [Citations.] Here, the trial judge found that the defendant consented to the search. It is not within the province of a court of review to assess the credibility of witnesses and a study of the evidence presented at the hearing on the motion to suppress does not lead us to conclude that the court's finding was unreasonable."

See also *People v. Armstrong* (1968), 41 Ill.2d 390, 396, 243 N.E.2d 825; *People v. Harris* (1966), 34 Ill.2d 282, 285, 215 N.E.2d 214.

■■ The defendant in this regard further contends that the salesman route cards should not have been seized. The Evanston police were in fact searching the car for any evidence that might have related to the rape charge in Cook County. It was subsequently ascertained that the route cards which covered the village of Bensenville area did in fact have probative value. We will not substitute our judgment for that of the trial court under the facts herein.

■■■ Defendant next contends the trial court erred in its rulings as to alleged hearsay evidence. The first allegation is that the teletype communication between the Bensenville police department and the Evanston police department giving the name of Roger Woods was hearsay and should not have been admitted. The contents of the teletype communication were not divulged to the jury and the communication was introduced actually as a means of showing why the complaining witness was brought into contact with the Evanston police department. We find no error in this regard. With further relation to hearsay, the defendant attempted to bring out the question of discrepancies between the police reports and the evidence presented, contending that this was impeachment by omission. The court refused to allow the cross examination. As the State points out, if he were attempting to impeach the officer for

an omission in his report he had not laid a proper foundation. Subsequently, however, the defendant went into great detail as to the police reports in question. The court held that the defense had opened the door in his examination and allowed the police officer to testify to his conversation with the complaining witness about the gun and the fact that she thought the car was a Mercury. The record discloses that the detective then testified that he told the girl not to include the use of the gun in her statement if she were not positive. Her testimony at the trial indicates that she thought that it was a gun. All of this was presented in detail to the jury and we find no error in this regard. The jury was fully apprised of the alleged discrepancy as to whether or not the defendant did or did not have a gun, and all of the alleged inconsistencies of the complaining witness' testimony and statements were brought out by defense counsel and were considered by the jury in their determination.

■■ Defendant alleges that the trial court should have granted the motion of the defendant for a directed verdict as to the attempt rape charge. The trial court at first was inclined so to do but then denied this motion and submitted the question to the jury, which found the defendant not guilty of attempt rape. Defendant's contention is that the inclusion of an attempt rape charge which allowed the court to instruct the jury on the subject of rape, prejudiced him and allowed the use of "emotion packed instructions." Under the facts alleged in this case we find that the action of the trial court in allowing the question to go to the jury was proper. The complaining witness testified that defendant used a gun, that he wanted intercourse, that he wanted her to commit a deviate sexual act, that he fondled her body, that he exposed himself, all of which in this court's opinion are sufficient to submit the question of attempt rape to the jury.

■■ Defendant objects to the closing argument, specifically as to two statements made by the prosecutor, one of which was "you have heard of statutory rape in the past." The objection was sustained and the jury was instructed to disregard the statement. The purpose of this statement was doubtless an attempt to show that consent was not a defense to a charge of indecent liberties or attempt rape. Such a statement was improper but in view of the facts herein, does not constitute such error as would prejudice the substantial rights of the defendant.

An additional alleged error pertains to a rainstorm which had occurred on the afternoon of the incident herein.

■■ Defendant contended that at the time of the incident herein there was a rainstorm and that he was at work at his place of employment, the Domestic Air Express, Mannheim and Irving Park roads. Defendant

introduced a tornado warning issued by the U.S. Weather Bureau covering the time of 2:50 P.M. until 3:30 P.M. for Du Page, Northern Cook and Lake Counties. The State in turn then introduced a weather report issued by the U.S. Weather Bureau at O'Hare International Airport showing that the rain in question occurred between 2:48 P.M. and 3:10 P.M. Defendant did not object to the admission of this document in evidence. However, it was pointed out that these times were Central Standard Time and the defendant had testified in his alibi, that he left his place of employment between 3:30 P.M. and 3:40 P.M. and that it was raining very hard. The O'Hare International Airport weather report shows that the rain commenced at 2:48 Central Standard Time which was 3:48 P.M. Daylight Savings Time in this area. The alibi defense witness, Arthur Donarski, had testified that Woods left the plant at 3:30 P.M. but prior to that he had gone outside and that it had "started to rain excessively"; that he came back in and was wet. The testimony therefore of both the defendant and his alibi witness would be that the rain occurred prior to 3:30 P.M., whereas the weather report of O'Hare airport indicates it did not start until 3:48 P.M. Defendant objects to the admission of the weather report because there was no proof as to the distance between the weather station at the O'Hare Airport and the Domestic Air Express at the southeast corner of the intersection of Mannheim and Irving Park road. Mannheim and Irving Park road bisect O'Hare airport. The proximity of the weather station located at the airport and defendant's place of employment is patent from the record. While it well may have been preferable for the State's Attorney to indicate the exact distance between the weather station and defendant's place of employment, failure to do so does not constitute reversible error, and this court may take judicial notice of such proximity. Once again, this is a question as to time in this instance first raised by the defendant. We consider this was a factual question for determination by the jury.

Lastly, defendant objects to the sentence imposed stating that he has been out on bond for a period of two years and has had no further arrests. In substance, defendants contends the ends of justice would best be served placing him on probation for the five year period without requiring him to serve the one year sentence. The State recommended 4-8 years in the penitentiary which the court rejected. A probation hearing was had in which the defendant produced Dr. Mildred Buck, a psychologist employed by the Division of Mental Health, Chicago Board of Health. Dr. Buck stated that she had seen Roger Woods at least fifty times in the past year since the incidents in Bensenville and Evanston, and it was her opinion "that the defendant had a very good chance of

living a good life once this matter was resolved." She further stated that if he were placed on probation that he would not get in trouble again and that she would be willing to work with him.

Under the circumstances of this case we will not substitute our judgment on the question of probation and sentence, and feel that the sentence imposed by the trial court was based upon the court's due consideration of the facts of the case, the treatment being given to defendant, and all favorable aspects of the probation report. We therefore affirm the decision of the trial court.

Affirmed.

SEIDENFELD and ABRAHAMSON, JJ., concur.

### SUPPLEMENTAL OPINION ON REHEARING

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The defendant petitioned this court for rehearing setting forth for the first time the provisions of the Unified Code of Corrections in this State pertaining to "split sentences". (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—6—3(d).) The defendant is correct in stating that this matter has not reached final adjudication as of the effective date of the statute. (*People v. Harvey* (1973), 53 Ill.2d 585, 294 N.E.2d 269.) Defendant is further correct in stating that incarceration may not presently be imposed as a condition of his probation except sentences of periodic imprisonment as set forth in Article 7 of the Unified Code of Corrections. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—7—1, *et seq.*) *People v. Rhinehart* (1973), 11 Ill.App.3d 859, 296 N.E.2d 781; *People v. Davis* (1973), 12 Ill.App.3d 1014, 299 N.E.2d 342.

In the instant case the defendant was granted probation for a period of five years, the first year to be served in the State Prison Farm at Vandalia.

■■ The defendant being entitled to the benefit of the provisions of the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—6—3(d)), we therefore affirm the judgment of conviction and remand this cause to the circuit court of Du Page County for proper sentencing.

Affirmed and remanded with directions.

SEIDENFELD and ABRAHAMSON, JJ., concur.