THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE GREEN, Defendant-Appellant.

(No. 59852;

First District (5th Division)—February 14, 1975.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell and Ira Churgin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of murder and attempt (robbery) in violation of sections 9—1 and 8—4 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, pars. 9—1 and 8—4) and was sentenced to concurrent terms of 20 to 60 years for murder and 1 to 5 years for attempt. On appeal, he contends: (1) that he was not proved guilty beyond a reasonable doubt; (2) that he was denied a fair trial because the trial court erred in admitting certain rebuttal evidence; and (3) that the court erred by basing its denial of defendant's post-trial motion on matters outside the record.

The following pertinent evidence was adduced at trial:

For the State:

*Rose Kulis*

She is the mother of Michael Kulis, who was a student at Loyola

University. On May 12, 1972, Michael was alive, but on May 13, 1972, he was dead.

*Barbara Banich*

She was a student at Loyola University and a friend of Michael Kulis. She had a date with Michael on the night of May 12, 1972. He left her at her dormitory on the north side of Chicago at 12 or 12:30 in the early morning of May 13, 1972.

*L. Hozell Zinner*

He is a Chicago Police Officer. At about 2:20 A.M. on May 13, 1972, he proceeded to the "el" station at 43rd and Calumet in response to a radio call regarding a shooting on a northbound train. In the southernmost car of the two-car northbound train, he found Michael Kulis in a seat between the doors on the east side of the car slumped next to the window with blood on his sleeve and called for an ambulance.

*Bertrand Fletcher*

He was a laborer at U. S. Steel. After leaving work at 4 P.M. on May 12, 1972, he went to a friend's house where he stayed until 1:45 A.M. on May 13, 1972. During the 9 or 10 hours he was there, he ate dinner and consumed between a quart and a gallon of wine; but did not become drunk. When he left, he boarded a northbound "el" train at 63rd and Halsted Streets and sat on the east side of the car in the rear facing south. There were 15 or 20 people in the car which was well lighted. A male caucasian wearing a multicolored jacket (Michael Kulis) was sitting in front of him.

When the train stopped at 59th and State, three black teenaged males wearing dark clothing boarded. They were laughing and making noise and they seemed to be "high." Although sleepy because he had been awake since 5:30 A.M. on May 12, he kept his eyes open for the 7 to 10 minutes the three youths were on the train. He saw them take seats in the rear of the train around Kulis—one in front of him, one next to him, and the third behind him. Fletcher glanced at the third person, the defendant George Green, as he sat down next to him. After the youths surrounded Kulis, they started going through his pockets as if they were trying to rob him. Fletcher saw Green reach around the seat, but did not actually see whether Green's hand entered Kulis' pocket. Kulis started to get up; but then let them go through his pockets.

As the train approached the 51st Street station, Fletcher left his seat to get off the train. The three black males also got up and stood behind him at the door. Kulis then ran past them toward the front of the car. One of the black men asked: "Shall I pop him?" and another answered: "Yeah." Fletcher did not know which of the people standing behind him

made those statements. Although Fletcher did not see a gun, after leaving the car, he heard a gun shot, which, because of his army training, he was able to identify as a .22-caliber weapon. As he walked to the south on the station platform, one man ran past him and the other two ran the other way. All three reunited on the street across from the station and left together.

On the following Monday, Fletcher's wife called the police. They showed Fletcher three photographs, but he was unable to identify anyone. On the following day they showed him nine photographs and he identified a photograph of Green as the person who was sitting next to him. Later that day police asked him to attend a line-up and to choose the person he had chosen from the photographs. He again identified George Green.

*Thomas V. Minton*

He is an investigator for the Chicago Police Department. On May 13, 1972, he went to Billings Hospital and inventoried Michael Kulis' belongings, including a multicolored jacket. He found no wallet.

*Timothy Tidmarsh*

He is the Chicago Police investigator who arrested defendant after Fletcher identified defendant's photograph. He did not recall asking Fletcher to pick out the person he had identified from the photographs.

Following this testimony, certain stipulations were entered indicating that Michael Kulis died of a .22-caliber gunshot wound in the head.

For the defense:

*Andrew McBane*

On the evening of May 12, 1972, he, Larry Hall, and defendant went to a poker game at 48th and St. Lawrence. They left at about 12 or 12:30 with Florence Woodfolk and Vickie Hall who were also there. They all walked to 47th and King Drive where they observed a fire in the Walgreen's building. At about 1 A.M. he took a cab home by himself.

*Victoria A. Hall*

In addition to essentially corroborating McBane's testimony, she further testified that she saw defendant and Florence Woodfolk leave together in a cab shortly after McBane departed.

*Florence Woodfolk*

While corroborating McBane's and Victoria A. Hall's testimony, she also testified that she left with defendant in a cab at about 12:45 and went to defendant's apartment. George Rudolph, George Richmond, and defendant's sister were there. They watched television and did not leave the apartment for the rest of the evening.

On rebuttal:

*John Buffins*

He is the manager of the Walgreen's store on 47th Street. There was no fire in the store on May. 12, 1972.

*Timothy Tidmarsh*

Over defense objection, he testified that after arresting defendant and advising him of his constitutional rights, defendant told him that on May 12, 1972, he went to Larry Hall's apartment. After going shopping, he, Larry Hall and Raymond Hall returned to Larry's apartment where they drank beer until 1:45 A.M. when he took a cab home. Defendant further stated that Florence Woodfolk was at his apartment when he arrived.

OPINION

Defendant first contends that he was not proved guilty beyond a reasonable doubt. He argues: (1) that Fletcher's identification testimony was vague, doubtful, and uncertain and was the product of improper and suggestive police procedures; (2) that the judge relied on "half facts" in finding defendant guilty; (3) that he was not proved guilty of murder under an accountability theory or under the felony-murder rule; and (4) that his conviction of attempt (robbery) must be reversed because it arose out of the same transaction as the murder conviction.

Defendant argues that Fletcher's identification testimony was vague, doubtful and uncertain and was the product of improper and suggestive police procedures. He points out that Fletcher had not slept for many hours; that he had been drinking; that he glanced at the person sitting next to him only briefly; that he was unable to recall the type of clothing the assailants were wearing; that he did not notify the police immediately; that he first identified defendant through a photographic display; and that at the line-up he was told to choose the person he had selected from the photographs.

■■ Identifications which are vague, doubtful and uncertain or which are the product of suggestive police procedures will not support a conviction. (*People v. O'Hara*, 332 Ill. 436, 458-459, 163 N.E. 804, 812; *People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152.) However, the law is also clear that the positive identification of one credible witness is sufficient to convict even in the face of contrary alibi evidence and that questions regarding the credibility of witnesses are for the trier of fact. (*People v. Thompkins*, 19 Ill.App.3d 674, 312 N.E.2d 380.) Furthermore, the facts and circumstances of each case must be examined in order to determine whether the identification procedures which were employed were suggestive. *Simmons v. United States*, 390 U.S. 377.

■■■ Having examined the record, we are convinced that Fletcher's

identification was reliable and uninfluenced by suggestive police procedures. Fletcher testified that he kept his eyes open during the time the assailants were in the train and that he was not intoxicated. Moreover, the circumstances he described support his statements. The assailants were on the train for 7 to 10 minutes and the train was well lighted. Fletcher got a look at the person who sat next to him; he noticed defendant reach around the seat and touch Kulis; and he was able to describe the attire of the trio in a general way. Also, Fletcher identified defendant within a few days of the crime. While photographs were used by the police in securing the arrest of defendant, the police are not prohibited from using photographs; they are only prohibited from using photographs in a manner which unfairly suggests that someone is the perpetrator of a crime. (*Simmons v. United States*, 390 U.S. 377.) The record here does not indicate that any photographs were used in an improperly suggestive manner. Although Fletcher stated that the police had told him before the line-up to select the person he had chosen from the photographs, there was no question that he was identifying the assailant who had sat next to him the night Kulis was murdered. Moreover, there is every indication that Fletcher's identification was positive.

■■ In arguing that he was not proved guilty beyond a reasonable doubt, defendant states that the judge relied on "half facts" in finding him guilty. After lamenting the fact that no one other than Fletcher came forward to testify, the court in finding defendant guilty stated:

> "This, the prosecution, the defense and the Court with hands tied must now make judgment on *half facts*. A sad commentary on our situation and life style today  *  *  *." (Emphasis added.)

In our opinion, this statement reflects the trial court's concern with the necessity of drawing inferences from the testimony of only one witness when there were 15 to 20 people on the train who witnessed the crime but who, because of fear or lack of concern, have not come forward to testify. We concur in the trial court's view. The statement does not indicate that the trial court was not convinced of defendant's guilt beyond a reasonable doubt.

Defendant also argues that he was not proved guilty of murder beyond a reasonable doubt since no evidence was adduced that he actually shot Michael Kulis. He recognizes that he may still be held criminally responsible for the murder under either the accountability statute or the felony-murder rule, but he argues that his guilt was not established under either of those theories.

■ Section 5—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 5—2) states the rule of criminal accountability:

> "A person is legally accountable for the conduct of another when:

&ast; &ast; &ast; (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

Clearly, under the accountability statute, the State must prove, although such proof may take the form of circumstantial evidence, that defendant before or during the murder intended "to promote or facilitate" the murder and actually solicited, aided, abetted, agreed or attempted to aid in the planning or commission of the murder. In the instant case, we do not believe the State met its burden regarding accountability. But we do believe that the State met its burden under the felony-murder rule.

Section 9—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 9—1) states the felony-murder rule:

"A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death: &ast; &ast; &ast; (3) [h]e is attempting or committing a forcible felony other than voluntary manslaughter."

Robbery is a forcible felony. Ill. Rev. Stat. 1971, ch. 38, par. 2—8.

■■ Defendant argues that he is not guilty of murder under the felony-murder rule because the attempt robbery had terminated prior to the shooting. The evidence shows that defendant attempted to rob Kulis. He and his associates surrounded Kulis, they went through Kulis' pockets, Fletcher saw defendant reach around the seat and touch Kulis, and no wallet was found on Kulis' body. Immediately after these acts, defendant and his associates got up to leave the train, but before they left, when Kulis ran past them, one of the trio shot Kulis. Particularly in view of the fact that defendant and his associates had not left the scene of the attempt robbery, we believe the felony-murder rule is applicable. See *People v. Johnson*, 55 Ill.2d 62, 302 N.E.2d 20.

Defendant, relying on *People v. Lilly*, 56 Ill.2d 493, 309 N.E.2d 1, argues that if the felony-murder rule is applicable, he is entitled to reversal of his conviction for attempt robbery because it arose out of the same transactions. On the basis of *Lilly*, we believe defendant is correct in this argument, and his conviction for attempt (robbery) must be reversed.

■■ Defendant next contends that he was denied a fair trial because the trial court erred in admitting certain rebuttal evidence. Rebuttal evidence explains, repels, contradicts, or disproves evidence produced by defendant in his case in chief. (*People v. Bell*, 328 Ill. 446, 159 N.E. 807.) In the instant case, although defendant did not testify, a police officer was permitted to testify in rebuttal regarding a statement defendant had made after being advised of his rights. Defendant's statement

indicated that his alibi witnesses may not have been truthful in their testimony that defendant was with them on the evening of May 12, 1972, prior to the murder. This rebuttal evidence directly contradicted all three defense witnesses on a matter which was a major thrust of the defense and reflected adversely upon the credibility of those witnesses. We believe this evidence was properly admitted on rebuttal. See *People v. Van Pelt*, 18 Ill.App.3d 1087, 311 N.E.2d 184.

 Defendant further contends that the court erred by basing its denial of defendant's post-trial motion on matters outside the record. The law is clear that a trial judge may not consider matters not of record. (See *People v. Jones*, 18 Ill.App.3d 198, 309 N.E.2d 776.) In the instant case, the trial judge, in ruling on defendant's post-trial motion, commented that the facts indicate the typical "m.o." for an "el" train robbery. We do not believe that such statements indicate that the trial judge improperly considered matters not of record. *People v. Collins*, 21 Ill.App.3d 800, 315 N.E.2d 916.

Therefore, defendant's conviction of murder is affirmed and his conviction for attempt robbery is reversed.

Affirmed in part, reversed in part.

DRUCKER and SULLIVAN, JJ., concur.