THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES DENWIDDIE, Defendant-Appellant.

Third District   No. 75-209

Opinion filed June 30, 1977.

STOUDER, J., dissenting.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (Thomas Carey, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant, James Denwiddie, was convicted of armed robbery

following a jury trial in the Circuit Court of Will County and was sentenced from 8 to 24 years in the penitentiary. On appeal he raises issues concerning his arrest, the search and seizure of items from his apartment and person, the scope of cross-examination and the admission of "mug shot" photos into evidence.

At 3:30 p.m. on June 19, 1974, a tall black man produced a sawed-off shotgun from a brightly colored shopping bag and pointed it at Richard Steller, who was selling train tickets behind a counter at Joliet Union Depot. A smaller black male, armed with a pistol, leaped over the counter to where Steller stood and exchanged guns with the other assailant. At gun point, the smaller man took Steller's wallet and directed Steller and Linda Stanford, another employee, to open a safe in a back office. The safe required a key to be opened. Subsequently Robert Pearson, the employees' supervisor, opened the safe, removing from it paper currency and rolled coins which the smaller robber stuffed into his pockets. The robbers then fled on foot.

Eyewitnesses told police that the smaller robber was dressed in a blue jacket and hat and wore tennis shoes, and that the taller robber wore a Levi hat. Steller stated that prior to the robbery the smaller man had shown him two one-way train tickets from Joliet to Chicago dated June 19, 1974, and had inquired whether they would be valid on a later date. Each eyewitness was shown 56 photos of armed robbery suspects, the last of which, chronologically, was a clear picture of the defendant bearing a prior arrest legend. Robert Patient, who had conversed with the smaller man prior to the robbery, and Robert Pearson positively identified defendant's photograph. Steller and Stanford made tentative identifications.

Five or six hours after the initial photographic identification by witnesses at the depot, police conducted a photographic lineup at the police station for Pearson, Steller and Stanford. The witnesses were shown 12 photographs of black males, including one of defendant which had not been shown to them during the afternoon. Pearson was unable to identify anyone, but Steller and Stanford positively identified defendant's photograph.

Based on the afternoon identification, police arrived at defendant's last known address, an apartment building at 109 Richards Street, around 4:40 p.m. The doors were not marked, and they initially went to the wrong apartment. Upon finding the right apartment and having been informed that the tenant was inside, police knocked loudly on the door and announced their presence. No one responded. Officers then summoned the building manager, who tried unsuccessfully to unlock the door with a pass key. Next the police tried to kick open the door after again knocking loudly and announcing their presence without any response from inside.

Eventually the building manager forced open the door and several officers, with guns drawn, entered the apartment.

Defendant's studio apartment had a living room, dining room, kitchen area and a bathroom. Defendant was arrested in the living room which doubled as a bedroom. Here police observed an open shopping bag containing a sawed-off shotgun, a bandolier containing shotgun shells, and loose shotgun shells. Police walked through the apartment in search of the second suspect and apprehended another man hiding in the bathroom at the rear of the apartment. In the dining area police observed a blue jacket and hat on a chair and two $50 money wrappers on the floor. In the kitchen an officer found a bag of rolled coins inside a china closet.

A search of the defendant's person produced $301.13 and two one-way railroad tickets from Joliet to Chicago dated June 19, 1974. A pair of tennis shoes, being worn by defendant, were also taken. The other suspect told police his name was "Buster Brown," but had no identification. "Brown" asked Officer Kelley to bring him some shoes located near the bed. Kelley went to the bed, picked up a shirt and observed an open bag containing money and a gun on top of the shoes. Hearing "Brown's" request to Officer Kelley, Officer Gerdes noticed a second pair of shoes near a couch which appeared to contain some business cards. Hoping to identify "Brown," Gerdes picked up the shoes and tilted them so that the cards fell out onto a coffee table. The cards bore the name of Richard Steller.

As defendant was removed from the apartment, police asked him if they could conduct a more thorough search of the premises, and he agreed. This search produced a Levi hat and trousers containing 128 one-dollar bills.

Pretrial hearings on defendant's motions to suppress certain statements, the photographic identification, and the evidence seized after his arrest resulted only in the exclusion of his statements and the bag of coins from the china closet. All other evidence was ruled admissible, and the court concluded that the photographic identifications were not the product of an unduly suggestive procedure.

At trial, Steller, Stanford, Pearson and Patient identified defendant as one of the robbers. A police officer identified defendant as one of two men he saw running down the street approximately one-half block from the depot at about the time of the robbery. He also testified that one of the men had carried a brightly colored shopping bag. A police technician testified that latent palm prints found on the ticket counter matched defendant's.

■■ Defendant first contends that his arrest was illegal because police, without a warrant, forced entry into his apartment. We disagree. In *People v. Wolgemuth* (3d Dist. 1976), 43 Ill. App. 3d 335, 356 N.E.2d

1139, we relied upon the case of *Dorman v. United States* (D.C. Cir. 1970), 435 F.2d 385, in reversing defendant's conviction for possession of a controlled substance where there were no exigent circumstances to justify the warrantless entry by police into his apartment. *Dorman* set forth various factors to be considered in determining whether "exigent circumstances" are present, including the following: (1) a grave offense is involved, particularly one that is a crime of violence; (2) the suspect is reasonably believed to be armed; (3) there exists not merely the minimum of probable cause that is required when a warrant has been issued but beyond that a clear showing of probable cause including "reasonably trustworthy information" to believe the suspect committed the crime involved; (4) strong reason exists to believe that the suspect is in the premises being entered; (5) there is a likelihood the suspect will escape if not swiftly apprehended; (6) whether the entry is forcible or peaceful; and (7) the time of entry (day or night). Although on balance, the *Dorman* criteria as applied in *Wolgemuth* precluded our sanctioning the warrantless entry into defendant's apartment, we think *Wolgemuth* is distinguishable on its facts. Unlike *Wolgemuth*, we are concerned in this case with a crime of violence and a suspect who was armed. Moreover, there is more than "minimum" probable cause for defendant's arrest, there was strong reason to believe that he was in the premises at the time of the entry, and the entry itself was secured in the daytime within two hours of the robbery. While the likelihood of defendant's escape was not great, we think that on balance the *Dorman* criteria were satisfied in this case. Since "exigent circumstances" existed here, it follows that no warrant was required.

We do not mean to suggest by our discussion of *Dorman* and *Wolgemuth* that a warrantless arrest will only be justified when exigent circumstances exist. Section 107—2(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 107—2(c)) permits an officer to arrest a suspect when he has reasonable grounds to believe that person is committing or has committed an offense. Reasonable grounds is the equivalent of probable cause (*People v. Lawson* (1st Dist. 1976), 36 Ill. App. 3d 767, 345 N.E.2d 41), which has been defined as "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Gerstein v. Pugh* (1975), 420 U.S. 103, 111, 43 L. Ed. 2d 54, 95 S. Ct. 854, 862.

■■ Where a statute authorizes arrest upon probable cause, as does section 107—2(c), an arrest made under such statute is not invalid because of a failure to obtain an arrest warrant. (*United States v. Watson* (1976), 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820; *cf. United States v. Santana* (1976), 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406; *People v. Johnson* (1970), 45 Ill. 2d 283, 259 N.E.2d 97, *cert. denied* (1970), 407 U.S. 914, 32

L. Ed. 2d 689, 92 S. Ct. 2445; *People v. Bell* (4th Dist. 1976), 41 Ill. App. 3d 233, 355 N.E.2d 38.) The fact that police may have had time to obtain an arrest warrant is immaterial. The Supreme Court said in *United States v. Watson*, 423 U.S. 411, 417, 46 L. Ed. 2d 598, 605, 96 S. Ct. 820, 824, "The necessary inquiry, therefore, was not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." In *Johnson*, the Supreme Court upheld defendant's warrantless arrest several days after police discovered his identity and address. Here defendant was arrested within two hours of the crime. Neither case involves the issue of whether the entry by police into defendant's apartment had been consented to. Under these circumstances, we conclude that defendant's warrantless arrest was based upon probable cause and would have been lawful even absent exigent circumstances.

■■ Furthermore, the police were justified in forcing entry into defendant's apartment. Section 107—5(d) (Ill. Rev. Stat. 1975, ch. 38, par. 107—5(d)) authorizes police to use all necessary and reasonable force to effect arrest. Where, as here, police, after announcing their authority and purpose, are refused entry into the place occupied by the person to be arrested, they are authorized to break open the door. *People v. Barbee* (1966), 35 Ill. 2d 407, 220 N.E.2d 401.

Defendant next contends that the items seized from his apartment and person were products of an impermissible search. In order to determine the merit of his claim it is necessary to review the circumstances surrounding the discovery of each item.

■■■ Since the arrest was lawful, a search incident thereto, limited to the area within defendant's immediate control at the time of arrest, was proper. (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.) The money and train tickets found on defendant's person were, of course, properly seized. We also think the seizure of the open shopping bag containing a shotgun, which was within the defendant's reach at the time of his arrest, was permissible under the *Chimel* doctrine. Further, the seizure of the bag, the blue jacket, cap, and money wrappers were all justified under the "plain view" doctrine. *Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623; see *Harris v. United States* (1968), 390 U.S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992.

■■ On the other hand, Steller's identification cards found in the shoes near the couch should have been suppressed. Officer Kelley, responding to "Brown's" request for his shoes, went to the bed, lifted a shirt from the floor and saw an open bag containing money and a gun. At the same time, Officer Gerdes observed some cards in another pair of shoes near the couch and, hoping to identify "Brown," tilted the shoe causing the cards to tumble onto a coffee table. He was then able to read

them. The fact that Gerdes saw some cards in a shoe cannot justify their seizure under the plain view doctrine where the criminal character of the evidence was not apparent on mere surface inspection. (*Cf. People v. Sanders* (5th Dist. 1976), 44 Ill. App. 3d 510, 358 N.E.2d 375.) Moreover, since his acknowledged purpose in viewing the cards was to discover "Brown's" true identity, his seizure of them cannot be justified as being incident to the arrest. Nonetheless, in light of the overwhelming evidence of guilt in this case, we do not consider their introduction at trial to have been reversible error. We also think the bag and its contents found by Kelley were properly seized under the plain view doctrine. Kelley had a right to be where the bag was located and necessarily had to lift the shirt in order to reach "Brown's" shoes. Upon doing so, he saw items of a criminal character in plain view. Therefore, these items were properly admitted at trial.

■■ Defendant next contends that he did not voluntarily consent to a more thorough search of his apartment since he was handcuffed and surrounded by armed police officers when he was removed from the premises. The test of a valid consent is voluntariness under the totality of circumstances. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041; *People v. Nunn* (1973), 55 Ill. 2d 344, 304 N.E.2d 81, *cert. denied* (1974), 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608.) In each case the determination of the factual question whether a valid consent was given is for the trial court, whose finding will be accepted by a reviewing court unless it is clearly unreasonable. (*People v. Sanders* (5th Dist. 1976), 44 Ill. App. 3d 510, 358 N.E.2d 375.) We have considered the record and agree with the trial court that the duress, if any, did not go beyond that inherent in any arrest. (*Cf. People v. Woods* (2d Dist. 1973), 13 Ill. App. 3d 860, 301 N.E.2d 593.) Therefore, a Levi hat and 128 one-dollar bills seized after defendant's removal from the premises were products of a valid consensual search and were properly admitted into evidence.

Defendant also contends that he was denied a fair trial because the trial court restricted his cross-examination of eyewitnesses concerning the quality of their in-court identification of him. However, the latitude to be allowed during cross-examination is in the trial court's discretion and we will only intervene if the record shows an abuse of discretion which prejudices the defendant. *People v. Gallo* (1973), 54 Ill. 2d 343, 297 N.E.2d 569; *People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771, *cert. denied* (1970), 396 U.S. 1016, 24 L. Ed. 2d 507, 90 S. Ct. 578.

■■ We have reviewed the record and conclude that the trial judge did not unduly restrict the scope of cross-examination. The judge permitted defense counsel to inquire into the circumstances surrounding the witnesses' identification of defendant until it became apparent to him

that counsel was merely engaging in a fishing expedition. In at least one instance, defense counsel was unable to demonstrate the relevancy of his questions when asked to do so by the court. In fact, defendant's real objection appears to be that the judge improperly sustained several objections to certain questions on grounds of relevancy. Since no abuse of discretion occurred, it follows that the defendant was not prejudiced by the court's rulings.

The case of *People v. Morris* (1964), 30 Ill. 2d 406, 197 N.E.2d 433, relied on by the defendant, is distinguishable. While we adhere to its holding that defense counsel should be given the widest latitude in cross-examining identification witnesses when the accused's identity is relevant to the case, we note that, unlike here, *Morris* involved an identification of rather questionable quality. In this case, by contrast, four identification witnesses had a long look at the defendant under proper conditions. Additionally, articles rightfully seized from defendant's apartment, such as the blue jacket, tended to corroborate their description of the robber to police.

■■ Defendant finally contends that it was plain error for the trial court to admit his "mug shot" photos into evidence. We disagree. People's exhibits Nos. 20 and 21 were the photographs shown to the identification witnesses at the train station and later at the lineup. Exhibit No. 20 showed defendant after an arrest for a prior offense. Exhibit No. 21 showed him after his arrest for the present robbery. Both photographs contained a police file number under defendant's picture which was covered over and were offered by defense counsel in this form at the motion to suppress hearing. When, at trial, the judge informed defense counsel that the photos would be admitted in the form he had offered them at the hearing to suppress, counsel withdrew his objection by agreeing to the judge's offer to admonish the jury to disregard the tags. Of course, defendant was not in a position to object to the form of pictures which he himself was responsible for. (*Cf. People v. Mackins* (1st Dist. 1974), 17 Ill. App. 3d 24, 308 N.E.2d 92, *cert. denied* (1975), 419 U.S. 1111, 42 L. Ed. 2d 808, 95 S. Ct. 786.) Since he withdrew the objection, the question was not preserved for review. *People v. Buoniconti* (1930), 340 Ill. 299, 172 N.E.2d 78.

■■ Even if the point had not been waived, we think the photographs were properly before the jury. "Mug shot" photos are often evidence of other crimes which is generally inadmissible. (*People v. Cage* (1966), 34 Ill. 2d 530, 216 N.E.2d 805.) However, the admission of "mug shots" is not automatically reversible error (*People v. Hudson* (3d Dist. 1972), 7 Ill. App. 3d 333, 287 N.E.2d 297), and evidence of extra-indictment offenses is admissible if it tends to prove a fact in issue, such as identity (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489). The photographs in this case went directly to defendant's identification by occurrence witnesses,

and therefore were admissible as an exception to the general rule regarding evidence of other crimes.

■■ Assuming *arguendo* that it was error to admit the photographs, the error, in our opinion, was harmless beyond a reasonable doubt despite the fact that one item of physical evidence from defendant's apartment was improperly admitted at trial. In this case four eyewitnesses positively identified defendant in court, although a single positive identification would have been sufficient to convict. (See *People v. Green* (1st Dist. 1975), 26 Ill. App. 3d 662, 325 N.E.2d 316.) These witnesses were corroborated by the articles properly taken from the apartment, which showed the description of the robbers given to the police had been accurate, as well as by the testimony of the officer who spotted the defendant outside the depot soon after the robbery. The seized articles themselves constituted circumstantial evidence of guilt. In addition, a palm print found on the counter where Steller worked matched the defendant's. The defendant's guilt was clearly established beyond a reasonable doubt.

Accordingly, the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

ALLOY, P. J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I respectfully dissent from my colleagues position that exigent circumstances need not exist before police may enter a private dwelling without a search warrant to effect an arrest. Nor can I agree that the facts and circumstances of this case demonstrate that exigent circumstances, nevertheless, do exist.

Before embarking further, I believe it is essential to clarify the type of warrant that is at issue here and in similar cases. The warrant which I believe necessary for police intrusion into any private dwelling is a search warrant and not an arrest warrant. Decisions have failed to distinguish between an arrest on probable cause and an intrusion into a private dwelling to search for someone who may be subject to an arrest. An arrest warrant speaks only to whether sufficient evidence exists to arrest a defendant and is silent as to where police may go in an effort to locate the subject of the arrest warrant. In contradistinction, the express terms of our Federal and State constitutions require that whether persons or things are to be seized, the warrant must describe the place to be searched. Hence, a determination of probable cause to arrest is not directed to the question of whether a search warrant is required before police may enter a private

dwelling in an effort to locate the individual who is subject to arrest.

While I have little disagreement with my colleagues determination that probable cause to arrest the defendant existed, I believe that reference to such a determination of probable cause does not in any way justify the failure of police to obtain a search warrant before entering the premises in question in an attempt to locate defendant. Probable cause to arrest goes only to whether police may restrain an individual's freedom and not where police may go in an effort to find that individual. Absent exigent circumstances, an independent judicial determination must be made as to whether there exists probable cause to search for someone at a particular location.

The majority relies on section 107—2(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 107—2(c)) to buttress its position that a warrantless arrest is still proper in the absence of exigent circumstances. Application of section 107—2(c) to justify police intrusion into a private dwelling without a warrant raises grave concerns to me as to the constitutionality of such procedure. The Louisiana Supreme Court, when presented with a similar statute and argument, stated:

> "We have grave doubts whether the provision may be constitutionally applied where an officer, although having probable cause to arrest, makes an unauthorized entry of a dwelling to effect the arrest under non-exigent circumstances. Our doubts are premised on the proscriptions against unreasonable searches and seizures contained in Article 1, §5 of the Louisiana Constitution (1974), and the Fourth Amendment to the United States Constitution." *State v. Ranker* (La. 1977), 343 So. 2d 189, 190-91.

The court continued by quoting article 1, section 5, of the 1974 Louisiana Constitution, which is virtually identical to article 1, section 6, of the 1970 Illinois Constitution. Thereafter, the Louisiana Supreme Court found that "[a]n application of this language * * * would appear to have required the issuance of a warrant before the search, seizure and invasion of privacy." 343 So. 2d 191.

This court has previously reached a similar conclusion in *People v. Wolgemuth*, 43 Ill. App. 3d 335, 356 N.E.2d 1139, *appeal allowed*, when it stated:

> "By its own terms the Federal and State constitutions require that, whether persons or things are to be seized, the warrant must describe the *place* to be searched." (43 Ill. App. 3d 335, 339-40, 356 N.E.2d 1139, 1142.)

The subject of the search may be either an inanimate object or person, but, in either case, police intrusion into a private dwelling to conduct a search is reasonable within Federal and State constitutions only when

police possess a search warrant or exigent circumstances excuse the failure to obtain such a warrant.

As was aptly observed by Mr. Justice Stewart in *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 477-78, 29 L. Ed. 2d 564, 589-90, 91 S. Ct. 2022:

> "It is clear, then, that the notion that the warrantless entry of a man's house in order to arrest him on probable cause is per se legitimate is in fundamental conflict with the basic principle of Fourth Amendment law that searches and seizures inside a man's house without warrant are per se unreasonable in the absence of some one of a number of well defined 'exigent circumstances.'"

However in *Coolidge*, the Supreme Court found it unnecessary to decide the issue confronting us today. While the Supreme Court again failed to resolve the issue in *Johnson v. Louisiana* (1972), 406 U.S. 356, 32 L. Ed. 2d 152, 92 S. Ct. 1620, the following colloquy occurred at oral argument and seems to support my position that either a search warrant or exigent circumstances must exist before police may enter a private dwelling. During oral argument, the following colloquy occurred upon an assertion by the attorney for the State that it would be unreasonable to require the police to obtain a warrant:

> "Mr. Justice Stewart: 'Are you familiar with this Court's case in *Warden v. Hayden*?'
>
> [Attorney for the State]: 'Yes, Your Honor, I am.'
>
> Mr. Justice Stewart: 'Well, why do you think this Court spent so long in carving out an exception if there was no general rule that you cannot enter a house without a warrant?'" Y. Kamisar, W. LaFave, & J. Israel, Modern Criminal Procedure 311-12 n.a. (4th ed. 1974).

Without exigent circumstances, police must obtain a warrant before entering a private dwelling. In *State v. Ranker* (La. 1977), 343 So. 2d 189, and *People v. Wolgemuth*, 43 Ill. App. 3d 335, 356 N.E.2d 1139, *appeal allowed*, further authorities are given to support the foregoing proposition, but no useful purpose would be served by citing them in this opinion.

Nor can I agree with the majority that section 107—5(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 107—5(d)), which authorizes police to use all necessary and reasonable force to effect an arrest, somehow excuses the failure of police to obtain a warrant for the nonexistence of exigent circumstances. The literal terms of the statute do not discuss searches or search warrants, but concern only the quantum of force police are authorized to use to effect an arrest. The amount of force which may be used to effect an entry does not resolve the precursory question of whether an entry in any manner is permitted. Only

if exigent circumstances exist or police possess a search warrant does section 107—5(d) apply and then only as a standard by which police may gage the amount of force they are permitted to use.

My colleagues have also cited *People v. Barbee* (1966), 35 Ill. 2d 407, 220 N.E.2d 401, in support of their position that police were authorized to enter the premises which defendant occupied by breaking open the door. Since *Barbee* was decided, several important decisions have been handed down in the area of warrantless entries, and *Barbee* must be considered in light of those subsequent opinions.

First, it is important to note that the doctrine of exigent circumstances was not created until the year following *Barbee* in *Warden v. Hayden* (1967), 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642. In addition, when deciding *Barbee*, our supreme court was without the guidance of *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, and the more recent decisions of *United States v. Watson* (1976), 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820, and *United States v. Santana* (1976), 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406. In light of these cases as well as the development of the *Dorman* rule (*Dorman v. United States*, 140 U.S. App. D.C. 313, 435 F.2d 385 (*en banc*)), *Barbee* cannot be regarded as persuasive precedent. It is interesting to note that in supporting their decision in *Barbee*, the court discussed many of the factors which were later enunciated as part of the *Dorman* rule. Even though the court in *Barbee* speaks in terms of a nonconsenual entry without a search warrant, the fact is the original entry was made under color of a search warrant which the trial court later held invalid. When authorities subsequent to *Barbee* are interpreted and applied, I believe they dictate a rule that requires either a search warrant or the existence of exigent circumstances before police may enter a private dwelling to effectuate an arrest.

The majority, while concluding that exigent circumstances need not exist to justify a warrantless entry, did, nevertheless, consider the question of the existence and found them present. I cannot agree that on balance exigent circumstances existed and thereby excused police from their obligation to obtain a search warrant. While the *Dorman* case does set forth certain criteria which are relevant in determining whether exigent circumstances exist, these factors are not exclusively controlling and each case must be determined on its individual facts. I believe many of the *Dorman* criteria are but specific questions directed to the broader and I believe more important area of inquiry, to wit, what is the nature of the consequences that will naturally flow from any delay involved in obtaining a search warrant. If no sufficient prejudice to police or citizenry can be shown to flow from such a delay, while the private dwelling owner is forced to forgo his fourth amendment rights, little justification can be found for the failure of police to obtain a warrant.

Here, defendant became a suspect shortly after the robbery occurred. The process of obtaining a search warrant for the address of defendant's last known place of residence could have been set it motion at this time, but was not. Police proceeded to this address arriving about one hour after the robbery but did not decide to forcibly enter the apartment for over 45 minutes. The police obviously did not feel that delay created any danger to themselves or the occupants of the building, nor does it appear they were concerned with the destruction of evidence. The presence of an officer at the rear of the apartment along with officers outside defendant's door, made it unlikely that any occupant of the premises would escape if not swiftly apprehended. In short, prompt action by police was not dictated by the existence of prejudice to police or citizenry.

I also cannot agree with my colleagues that the police had strong reason to believe the defendant was actually in the apartment. The only person to tell police that the defendant had recently entered the apartment was a tenant, Mrs. Ford, living next to the apartment where defendant was eventually arrested. She identified a mug shot of the defendant as the man who had entered the apartment. The State admitted that Mrs. Ford was an old woman verging on senility and was a frequent complainer to the office of the State's Attorney and the Joliet Police Department. During the hearing on defendant's motion to suppress, the prosecutor refrained from calling Mrs. Ford, apparently because the prosecutor believed her testimony was unreliable. Instead, police officers were allowed to testify as to Mrs. Ford's out-of-court statements, apparently because the trial court felt her truthfulness or credibility had no connection with the reasonableness of the police officer's actions. The manager of the apartment building did not see the defendant in the apartment and was unaware if defendant was in the apartment at the time. Since the only information given police as to whether defendant was actually in the apartment was provided from an unreliable witness, police could not have strong reason to believe defendant was in the apartment.

After considering all the factors and the totality of circumstances surrounding the police entry, I cannot agree with the majority that the State established exigent circumstances sufficient to overcome an individual's fourth amendment rights. I therefore believe the entry by police without a search warrant was constitutionally impermissible.

In summary, the State must demonstrate the existence of exigent circumstances before a police intrusion into a private dwelling without a search warrant can be excused. Having failed to so demonstrate in this case, I believe the evidence seized in defendant's apartment must be suppressed.