**People of the State of Illinois, Appellant, v. Mario T. Sprovieri, Appellee.**

**Gen. No. 51,609.**

First District, Fourth Division.

April 10, 1968.

Rehearing denied May 17, 1968.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Thomas M. Burnham, and Patrick A. Tuite, Assistant State's Attorneys, of counsel), for appellant.

Bellows, Bellows & Magidson, of Chicago, for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Prior to trial, defendant, who was indicted for murder, filed a motion to suppress certain evidence,[1] and the motion was allowed. The State appealed,[2] contending that the trial judge erred in suppressing as evidence articles found in open view in defendant's garage by police officers who had entered without a warrant for the avowed purpose of arresting him.

The only evidence adduced at the hearing was the testimony of Officer William Lenz, one of the policemen present at the garage when the items were discovered and seized. From his testimony, the court made the following statement for the record which we accept as a summary of the evidence:

> The Court finds from the evidence that on May 29, 1965, about 3:20 p. m. a body of a victim was found in the trunk of a car at the rear of 2059 Grand Avenue in Chicago without identification. Defendant was present at about 4:15 p. m. and had occasion to view the body and stated he did not know the person but "looked like a cab driver he knew."
>
> Later, on May 30th, 1965, which was the following day at 4:35 a. m. the police did learn the identity of the victim. They spoke to the mother of Judith Blaha and determined that the daughter had lived with the victim and that the defendant had threatened the victim with bodily harm.

---

[1] Ill Rev Stats (1967), c 38, § 114–12.

(a) A defendant aggrieved by an unlawful search and seizure may move the court for the return of property and to suppress as evidence anything so obtained on the ground that:

(1) The search and seizure without a warrant was illegal; . . .

(b) . . . The judge shall receive evidence on any issue of fact necessary to determine the motion and the burden of proving that the search and seizure were unlawful shall be on the defendant.

[2] See People v. Zeravich, 30 Ill2d 275, 195 NE2d 612, on the State's right to appeal.

The officers also learned from one Carol Stroud the defendant had threatened deceased if he ever caught deceased with Judith Blaha. The officers learned from Judith Blaha's landlord that Judith had left the apartment with a male fitting the description of the defendant and was carrying a red suitcase.

Police also learned that Judith had a white 1959 or a 1960 T Bird convertible and that the evidence further showed that the police spoke to about five people, two of whom stated that the defendant was not in Chicago.

Officer William Lenz on May 30th, 1965, between 1:00 p. m. and 6:30 p. m. without an arrest or search warrant went together with other officers to the home of the defendant at 2632 West Superior Street, Chicago, had a conversation with the tenant on the first floor, front apartment, went to the rear apartment of the defendant and received no response.

Officer Lenz then went to the window and received no response. Thereupon he peered through the window and the home appeared empty. He saw a couch with a red suitcase and part of woman's apparel over the back of the couch.

The officers slipped the lock and entered the home through the front door. Nothing whatever was taken from the apartment, at least insofar as the motion is concerned.

The Police Officers Lenz, Barrett, Angelo and Miskula then went to the rear of the lot to a private garage to the south end door and looked into the garage through a hole in the door where the lock had been removed. They saw a white T Bird, tank, and other articles inside and in view through this hole.

The officers then went to the public alley side of the garage, turned the handle of the overhead door

which was not locked, lifted the door, entered and seized the items in question and called the Crime Laboratory.

Subsequently after May 30th, 1965, a warrant for the arrest of the defendant was obtained and defendant was taken into custody.

██ The State argues that since there existed probable cause sufficient to sanction the arrest of defendant without a warrant, then it should be permitted to use the articles taken from the garage for evidentiary purposes. We are constrained to agree with this proposition under the authority of People v. Barbee, 35 Ill2d 407, 220 NE2d 401.

The facts in Barbee were strikingly similar to those in the instant case. The police entered Barbee's home for the purpose of arresting him. While looking for him, they found a stolen automobile under a tarpaulin in the garage attached to his home. On motion to suppress, it was determined that the police did not have a valid warrant. However, the Supreme Court, finding that the police had reasonable grounds to believe that Barbee had committed a criminal offense, reasoned:

> A police officer may arrest without a warrant "when a criminal offense has in fact been committed, and he has reasonable grounds to believe that the person to be arrested has committed it." (Citations.) And when an officer is authorized to make an arrest, he is also authorized "to break open a door or window of any building in which the person to be arrested is or is reasonably believed to be, if he is refused admittance after he has announced his authority and purpose." (Citations.) It is of course true that in the present case the officers who entered Barbee's home made no arrest. But this circumstance cannot be significant. Just as "a search is

13

not to be made legal by what it turns up," (Citation) so the legality of the conduct of the officers in this case is to be determined upon an appraisal of the situation that confronted them, and not upon the success or lack of success of their efforts. (P 411.)

The court went on to hold

that the officers were lawfully present in the garage where the stolen car was found. They were not required to overlook the stolen car which was before them in plain view when they removed the tarpaulins in their search for Barbee. Here, as in Abel v. United States, 362 US 217, 238, 4 L Ed2d 668, it would be without reason to say that the officer must overlook or return an article subject to lawful seizure "because it was not one of the things it was his business to look for." (P 412.)

As in Barbee, if the police were in the garage for the purpose of making a lawful arrest, there exists no rule of law which would blind them to what lay in open view. The fact that the garage, while on defendant's property, was not physically attached to the apartment, is of no importance. Under the circumstances which then existed, a search for defendant in the garage was as reasonable as a search of the apartment.

Defendant argues that the police did not reasonably believe that he was actually home at the time they entered. Although the police were told he wasn't at home, they were not required to rely on these statements. Just as in Barbee, where the defendant's wife told the police he was not home, rudimentary police procedure dictates that a suspect's residence be eliminated as a possible hiding place before a search is conducted elsewhere. And it should be borne in mind that, on the motion to suppress

14

in this case, defendant had the statutory burden of proving that the seizure was unlawful. Ill Rev Stats (1967) c 38, § 114–12(b), quoted above in footnote 1. Under the circumstances of this case, this burden resolved itself into a burden of proving that the police had entered defendant's garage for a purpose other than to arrest him, since the evidence otherwise established that the police had probable cause to believe that defendant had committed a crime. The record is insufficient to sustain defendant's burden on this point, the contrary being quite well established.

■ Defendant next contends that his constitutional right to privacy was invaded when the police peeped through his apartment window and through a hole in his garage door. This point is also without merit. Since the police had the right to break into any building in which they reasonably believed defendant could be found, they certainly had the right to look inside before breaking in. To hold otherwise would be to demand that the police expose themselves unnecessarily in apprehending dangerous suspects, not to mention the encouragement such a ruling would give to the wasteful destruction of property.

Therefore, if the police were authorized to arrest defendant without a warrant, the motion to suppress should have been denied. And the police were so authorized if they had reasonable grounds to believe that defendant had committed an offense. See Ill Rev Stats (1963), c 38, § 107–2(c). In fact, the trial judge expressly found that such reasonable grounds did exist. We agree, and defendant's position that the police might have had the opportunity to obtain a warrant is not germane, under the circumstances.

The legality of the officers' actions should not be assessed on the basis of finespun theories applied through hindsight, but, rather, in the light of the factual and

15

practical considerations of everyday life upon which reasonable and prudent men act. People v. Davis, 34 Ill2d 38, 213 NE2d 531. Nor are we concerned with whether or not there was then sufficient evidence to convict the person arrested. E. g., People v. Jones, 31 Ill2d 240, 201 NE2d 402.

The police in this case knew that a violent and brutal murder had been committed. They believed that defendant had a motive to commit this crime based on the relationship which had existed among him, the victim, and Judith Blaha. They learned that defendant had lied when he denied knowing the victim. They also learned that defendant had threatened the victim with bodily harm. Coupled with information that defendant intended to depart Chicago, it was reasonable to believe not only that defendant had committed the murder, but, also, that prompt action to accomplish his arrest was imperative. The fact that the attempted arrest might not be considered to have been in "fresh pursuit" when the time is computed from commission of the crime, is beside the point. The reportedly imminent departure of defendant from the area imparted all necessary urgency to the conduct of the police.

Seizure of the evidence in question was reasonable and lawful. The order appealed from is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

McCORMICK, P. J. and DRUCKER, J., concur.