343 So.2d 189 (1977)
STATE of Louisiana
v.
Roland RANKER.
No. 58682.
Supreme Court of Louisiana.
February 28, 1977.
Maurice Hattier, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Lawrence J. Centola, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
The defendant, Roland Ranker, was convicted of armed robbery, La.R.S. 14:64, and sentenced, as a multiple offender, to ninetynine years at hard labor. On appeal he assigned numerous errors, and we find merit in defendant's first assignment.
Prior to trial defendant unsuccessfully moved to suppress as evidence a brown tank-top shirt seized by police officers at the time of his arrest. At trial the shirt was introduced, over defendant's objection, as evidence linking him to the robbery.
The facts giving rise to the seizure of the tank-top shirt, as established at the hearing on the motion to suppress, are as follows:
*190 At approximately 10:00 a.m. on August 19, 1975, twelve days after the armed robbery for which defendant was convicted, two New Orleans police officers were fired upon by an unknown black male. Relying on a general description of the assailant as a man of "stocky build" with an Afro hairdo and a Fu Manchu mustache, two other officers, Harry Smith and his partner, were patrolling the vicinity of the shooting looking for the assailant. At approximately 12:00 noon they received information by radio that a subject fitting the description had been sighted in the same neighborhood by another policeman. The suspect, who had eluded the officer on Duplessis Street, was then wearing a brown tank-top shirt and brown slacks.
About an hour later Officer Smith and his colleague received an anonymous phone call forwarded by police radio informing them that "the subject who had a shoot out with the police was at 4016 Duplessis Street." Officer Smith testified that neither he nor his partner recognized the caller, who had not identified himself. Nevertheless, based on this information, the officers, without obtaining an arrest or search warrant, went to an apartment at the stated address and upon hearing what sounded like "movement inside the house," entered the residence yelling "police."[*]
Once inside, after walking through the kitchen and living room, the officers heard "some movement upstairs," and called for "whoever was up there" to come down. The defendant, Roland Ranker, came downstairs, and the officers, finding that his physical description matched that of the suspect sought, immediately placed him under arrest. However, the defendant was not wearing the brown tank-top shirt.
Officer Smith then conducted a search of the entire house for other occupants. None were found, but from the top of a clothes hamper in the bathroom upstairs Officer Smith retrieved the brown tank-top shirt which was the subject of the motion to suppress. The shirt was seized not only because it matched the description of the clothing worn by an individual thought to be the gunman who had fired on the other officers earlier that day, but also because it fit the description of clothing worn by the perpetrator of certain armed robberies then under investigation by the police.
The record does not reflect whether the dwelling in which the defendant was arrested belonged to him or someone else.

I.
A troublesome question presented by this case is whether the police, in non-exigent circumstances, are required to obtain a warrant before acting, not only in case of entry of a dwelling to search for property, but also in case of entry to arrest a suspect.
Louisiana Code of Criminal Procedure Article 213(3) purports to authorize warrantless arrests whenever the officer has reasonable cause to believe the person to be arrested has committed an offense. We have grave doubts whether the provision may be constitutionally applied where an *191 officer, although having probable cause to arrest, makes an unauthorized entry of a dwelling to effect the arrest under non-exigent circumstances. Our doubts are premised on the proscriptions against unreasonable searches and seizures contained in Article I, § 5 of the Louisiana Constitution (1974), and the Fourth Amendment to the United States Constitution.
Article I, § 5 of the 1974 Louisiana Constitution provides:
"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
An application of this language to the facts of the instant case would appear to have required the issuance of a warrant before the search, seizure and invasion of privacy.
The Fourth Amendment to the United States Constitution provides:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
The United States Supreme Court has not yet resolved the issue of whether the Fourth Amendment requires a warrant for non-exigent arrests within the home. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (footnote 6, and separate concurring opinions of Justices Powell and Stewart); Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (footnote 13). Nevertheless, the Supreme Court has not been entirely silent with respect to the issue. In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), a majority of the Court agreed with the following proposition:
"It is clear, then, that the notion that the warrantless entry of a man's house in order to arrest him on probable cause is per se legitimate is in fundamental conflict with the basic principle of Fourth Amendment law that searches and seizures inside a man's house without a warrant are per se unreasonable in the absence of some one of a number of well defined `exigent circumstances.'" 403 U.S. at 477-78, 91 S.Ct. at 2044, 29 L.Ed.2d at 589-90.
The Court further noted in Coolidge, that:
"The case of Warden v. Hayden [387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)], where the Court elaborated a `hot pursuit' justification for the police entry into the defendant's house without a warrant for his arrest, certainly stands by negative implication for the proposition that an arrest warrant is required in the absence of exigent circumstances." 403 U.S. at 480-81, 91 S.Ct. at 2045, 29 L.Ed.2d at 591.
However, the Court found it unnecessary to decide the question in Coolidge. The Supreme Court again failed to resolve this issue in Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), concluding that the "validity of Johnson's arrest" was "beside the point" because "no evidence which might properly be characterized as the fruit of an illegal entry and arrest was used against him at his trial." 406 U.S. at 365, 92 S.Ct. at 1626, 32 L.Ed.2d at 161. Consider, however, the colloquy at oral argument following the assertion by the attorney for the state that it would be unreasonable to require the police to obtain a warrant:
"Mr. Justice Stewart: Are you familiar with this Court's case in Warden v. Hayden?

"[Attorney for the State]: Yes, Your Honor, I am.

*192 "Mr. Justice Stewart: Well, why do you think this Court spent so long in carving out an exception if there is no general rule that you cannot enter a house without a warrant?" Y. Kamisar, W. LaFave, J. Israel, Modern Criminal Procedure, p. 311 (4th ed. 1974).
Compare, Note, The Neglected Fourth Amendment Problem in Arrest Entries, 23 Stan.L.Rev. 995, 996 (1971), which argues that a search warrant should be required in order to "obtain a magistrate's determination that there is probable cause that the person sought is within the place to be entered and searched."
While the United States Supreme Court has not finally resolved the question, we are aware that a significant number of federal and state appellate courts have found the protection of the Fourth Amendment of the federal constitution against violation of the right of the people to be free of unreasonable searches and seizures extends to arrests within the home, and that warrantless arrests within the home are per se unreasonable absent exigent circumstances. Dorman v. United States, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970) (en banc); Vance v. North Carolina, 432 F.2d 984 (4th Cir. 1970); United States v. Shye, 492 F.2d 886 (6th Cir. 1974); United States v. Phillips, 497 F.2d 1131 (9th Cir. 1974); United States v. Weinberg, 345 F.Supp. 824 (E.D.Pa.1972), aff'd in part, 478 F.2d 1351 (3d Cir. 1973), cert. den., 414 U.S. 1005, 94 S.Ct. 363, 38 L.Ed.2d 242 (1973); United States v. Rodriguez, 375 F.Supp. 589 (S.D.Tex.1974), aff'd, 497 F.2d 172 (5th Cir. 1974); People v. Ramey, 16 Cal.3d 263, 127 Cal.Rptr. 629, 545 P.2d 1333 (1976); Commonwealth v. Forde, Mass., 329 N.E.2d 717 (1975). But see, United States ex rel. Falconer v. Pate, 319 F.Supp. 206 (N.D.Ill.1970), aff'd without opinion, 478 F.2d 1405 (7th Cir. 1973), cert. den., 414 U.S. 1094, 94 S.Ct. 726, 38 L.Ed.2d 551 (1973); State v. Perez, 277 So.2d 778 (Fla.1973), cert. den., 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 468 (1973).
There is authority in other states for the proposition that police may enter a person's house and look for him when they have grounds to arrest him, although there exists some uncertainty as to how likely it must appear that the defendant is there. People v. Eddington, 23 Mich.App. 210, 178 N.W.2d 686 (1970), aff'd, 387 Mich. 551, 198 N.W.2d 297 (1972); People v. Sprovieri, 95 Ill. App.2d 10, 238 N.E.2d 115 (1968). But there is also authority to the effect that a search warrant is ordinarily required when the defendant is sought elsewhere. England v. State, 488 P.2d 1347 (Okl.Cr.1971). But cf. Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966); United States v. Brown, 151 U.S.App.D.C. 365, 467 F.2d 419 (1972).
However, we find it unnecessary to reach the ultimate question of whether the warrantless arrest of an accused in his home is per se unreasonable absent exigent circumstances, for the issue presented by the present case may be resolved by resort to well established jurisprudence.
We have repeatedly held that a warrantless arrest, no less than an arrest pursuant to a validly issued warrant, must be based on the arresting officer's reasonable belief that the person to be arrested has committed or is committing an offense. State v. Jackson, 337 So.2d 508 (La.1976); State v. Scott, 320 So.2d 538 (La.1975); State v. Terracina, 309 So.2d 271 (La.1975); State v. Odom, 292 So.2d 189 (La.1974). Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Marks, 337 So.2d 1177 (La.1976); State v. Randolph, 337 So.2d 498 (La.1976); State v. Gilmore, 323 So.2d 459 (La.1975); State v. Wood, 262 La. 259, 263 So.2d 28 (1972). While the officer need not have sufficient proof to convict, mere suspicion is not enough to justify an arrest. State v. Randolph, supra.
In the case at bar, the police of course knew the suspected gunman had been seen on Duplessis Street. But their only specific *193 information had come from an anonymous tipster, not a reliable informant who previously had given information leading to arrests and convictions. The source of the information was not revealed to the officers. The informant's tip was starkly devoid of any details, such as a description of the defendant or his clothing, which might tend to indicate that the information was reliable. The officers did not place the apartment under surveillance, make any attempt to determine who resided there, or use any means to verify the reliability of the tip before making entry. Thus in contrast with the factual situation in State v. Marks, supra, for example, the police officers here were not armed with information from a reliable informant which they personally verified before taking measures to arrest the occupant of the apartment. See, Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Indeed, they had not even been informed of any of the underlying circumstances from which the anonymous informant concluded that the person who had the shoot out with the other policemen was at 4016 Duplessis Street. Compare, Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
Under the facts and circumstances here, the police officers did not have probable cause and reasonable grounds to believe that a person who had shot at other police officers earlier in the day was in the apartment at 4016 Duplessis Street. At most they had information sufficient to arouse a suspicion and warrant further investigation. The arrest was therefore unlawful, and the subsequent search and seizure, as direct concomitants of that unlawful arrest, were likewise invalid. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Lawrence v. Henderson, 344 F.Supp. 1287 (E.D.La.1972); State v. Kinnemann, 337 So.2d 441 (La.1976); State v. Saia, 302 So.2d 869 (La.1974).

II.
An additional reason exists for suppressing the evidence obtained through the search seizure conducted in the present case. Even if the arrest had been valid, the scope of the search exceeded that which could have been conducted incident to a lawful arrest.
The State, relying on Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), wherein the United States Supreme Court recognized as legitimate the interest of police officers in insuring their own safety at the time of an arrest, argues that Officer Smith was justified in searching the entire house to insure that no other persons were present who might endanger the safety of the officers making the arrest. Furthermore, the State contends that the shirt, being in "plain view" as defined by Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1974), was lawfully seized when the officer inadvertently discovered it in the upstairs bathroom. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).
In Chimel v. California, supra, the United States Supreme Court considered whether the warrantless search of a defendant's entire house can be constitutionally justified as incident to his lawful arrest there. The high Court stated:
"* * * When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of a person arrested. There is ample justification, therefore, for a search of the arrestee's *194 person and the area `within his immediate control'construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

"There is no comparable justification, however, for routinely searching any room other than that in which an arrest occursor, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The `adherence to judicial processes' mandated by the Fourth Amendment requires no less. * * *

"It is argued in the present case that it is `reasonable' to search a man's house when he is arrested in it. But that argument is founded on little more than a subjective view regarding the acceptability of certain sorts of police conduct, and not on considerations relevant to Fourth Amendment interests. Under such an unconfined analysis, Fourth Amendment protection in this area would approach the evaporation point. It is not easy to explain why, for instance, it is less subjectively `reasonable' to search a man's house when he is arrested on his front lawnor just down the streetthan it is when he happens to be in the house at the time of arrest. * * * No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items. The only reasoned distinction is one between a search of the person arrested and the area within his reach on the one hand, and more extensive searches on the other." 395 U.S. at 762-66, 89 S.Ct. at 204-42, 23 L.Ed.2d at 694-96. (Emphasis supplied.)
In the present case, the search encompassed the entire residence, not simply the area within the immediate control of the defendant. The scope of the search greatly exceeded the limited exception to the warrant requirement sanctioned by the Supreme Court in Chimel. See also, United States v. Anderson, 175 U.S.App.D.C. 75, 533 F.2d 1210 (1976).
In Coolidge v. New Hampshire, supra, the Supreme Court recognized that
"* * * under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, any evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the `plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal. * * * Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate. Thus the police may inadvertently come across evidence while in `hot pursuit' of a fleeing suspect. And an object which comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant. Finally, the `plain view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object.

"What the `plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justificationwhether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accusedand permits the warrantless seizure. * * *" 403 U.S. at 465-66, 91 S.Ct. at 2037-38, 29 L.Ed.2d at 582-83. (Emphasis supplied.) *195 The State has urged, as a prior justification for the instant search and seizure, the right of the police to insure their safety at the time of the arrest. The State argues that the officers had heard "sounds" upstairs, and therefore acted reasonably in searching the entire house for other persons. It does not appear, from Officer Smith's testimony, that any sounds suggesting the presence of other persons in the house were heard after the defendant came downstairs. Furthermore, the arrest was completed before the search was begun. The officers could have amply insured their safety by removing the defendant from the premises immediately. Therefore, the intrusion into the upstairs rooms which brought the police into view of the tank-top shirt was not supported by any of the recognized exceptions to the warrant requirement, and its seizure was unlawful.
For the foregoing reasons the defendant's motion to suppress was improperly denied and the seized tank-top shirt was unlawfully received into evidence at the trial. A substantial violation of defendant's rights resulted, requiring reversal of his conviction and sentence. La.C.Cr.P. art. 921.
The defendant's conviction and sentence are set aside, and the case is remanded to the district court for a new trial.
SANDERS, C.J., and SUMMERS and MARCUS, JJ., dissent.
NOTES
[*] Defense counsel, interrogating Officer Smith at the hearing, elicited the following testimony:

"Q. What happened when you arrived at this address?
A. We had heard some scuffling inside.
Q. What do you mean by `scuffling?'
A. Movement. I can't explain it any more than that. It sounded like movement inside the house.
Q. Did you think a felony was being committed at this particular time?
A. We had reason to believe, after chasing the subject all day long.
Q. How did you know that was the subject you were chasing?
A. We didn't know.
"* * *
"Q. How did you know this was the individual you were chasing?
A. At the time we were at the door, we didn't, until we went inside.
Q. You really didn't know if a felony was being committed inside that apartment?
A. No, we didn't.
Q. Did it dawn upon you to get a search warrant?
A. No.
Q. Did you open the door and go in?
A. Yes.
Q. Did you find anybody in the apartment?
A. We heard some movement upstairs and we yelled for whoever was up there to come down and the defendant came downstairs."